In the Matter of the Accounting of FIRST TRUST AND DEPOSIT COMPANY, as Trustee under the Will of J. ARTHUR CLARK, Deceased.

FIRST TRUST AND DEPOSIT COMPANY, as Trustee, et al., Appellants; ALPHA A. ADSIT et al., Respondents.

Argued January 18, 1939; decided March 7, 1939.

*George W. Lee* and *Henry H. Bruce* for First Trust and Deposit Company, as trustee, appellant. The trustee acted in good faith in making the principal advances and there is no evidence that it has been careless or negligent in its administration of the trust. (*Matter of Wentworth*, 230 N. Y. 176; *Matter of Wilkin*, 183 N. Y. 104; *Ireland* v. *Ireland*, 84 N. Y. 321; *Matter of Cowen*, 148 Misc. Rep. 35; *Carrier* v. *Carrier*, 226 N. Y. 114; *Cushman* v. *Cushman*, 116 App. Div. 763; 191 N. Y. 505; *Matter of Hilton*, 174 App. Div. 193; *Matter of Palestine*, 151 Misc. Rep. 100; *Rezzemini* v. *Brooks*, 236 N. Y. 184; *Holden* v. *Strong*, 116 N. Y. 471; *Matter of Martin*, 269 N. Y. 305; *Matter of Osborn*, 252 App. Div. 438.)

*John F. Nash*, for Anna C. Clark, appellant. The payments out of principal were properly made. (*Matter of Gatehouse*, 149 Misc. Rep. 648; *Holden* v. *Strong*, 116 N. Y. 471; *Rezzemini* v. *Brooks*, 236 N. Y. 184; *Forman* v. *Whitney*, 2 Abb. Dec. 163; *Matter of Reed*, 22 App. Div. 328.)

*William G. Easton* for respondents. The trustee has administered the trust in a careless and negligent manner and did not use sound judgment and discretion in paying over $1,900 of the corpus. (*Hirshfeld* v. *Fitzgerald*, 157 N. Y. 166; *Union Trust Co.* v. *Oliver*, 214 N. Y. 517; *Holden* v. *Strong*, 116 N. Y. 471; *Matter of Wentworth*, 230 N. Y. 176; *Matter of Flood*, 127 Misc. Rep. 797; 243 N. Y. 598; *Matter of Shea*, 234 App. Div. 176; *City Bank Farmers Trust*

*Co.* v. *Smith*, 263 N. Y. 292; *Matter of Osborn*, 252 App. Div. 438; *Matter of Martin*, 269 N. Y. 305; *Matter of Hartley*, 90 Misc. Rep. 534; *Matter of Fisk*, 45 Misc. Rep. 298; *Rezzemini* v. *Brooks*, 236 N. Y. 184.) The beneficiary's personal income should be considered by the trustee in determining whether invasion of the corpus of the trust should be made. (*Matter of Hogebom*, 219 App. Div. 131; *Matter of Martin*, 269 N. Y. 305; *Matter of Kelly*, 166 Misc. Rep. 774.) The court will interpose when a trustee instead of exercising its judgment, delegates the matter to the judgment of others. (American Law Institute, Restatement of the Law of Trusts, § 187; *City Bank Farmers Trust Co.* v. *Smith*, 263 N. Y. 292; *Matter of Osborn*, 252 App. Div. 438.)

RIPPEY, J. J. Arthur Clark, of Baldwinsville, New York, died January 27, 1931, leaving a last will and testament which was duly probated and under which the First Trust and Deposit Company of Syracuse was appointed and thereafter duly qualified and has been acting as executor and trustee.

In his will the testator first directed the payment of his debts and funeral expenses. In the second paragraph he made a specific bequest to his niece, Alpha A. Adsit. In the third paragraph he gave to his wife such sums as might be necessary to satisfy any mortgage or liens upon property owned by himself and wife jointly or as tenants by the entirety, together with other specifically named property. In the fourth paragraph he directed that all of the residue of his estate should be held by his executor in trust and that the income thereof should be paid to his wife during her life in quarterly installments. In the fifth paragraph of his will he provided specifically for the distribution upon the death of his wife of the corpus of the trust. Among the provisions therein contained he disposed specifically of three hundred shares of the capital stock of the American Telephone and Telegraph Company. In the sixth paragraph he said: " In the event that the income provided for

my said wife under paragraph ' Fourth ' above shall, in the judgment of my trustee, be insufficient for her every comfort and support, I authorize my said trustee to pay to her, in addition to income, such portion of the principal of the said trust as it shall from time to time deem necessary." Later on in the same paragraph the testator says: " I further direct my said trustee to retain as a part of my estate the said stock in the American Telephone and Telegraph Company."

On July 5, 1934, a decree was entered settling the accounts of the executor and directing the executor, among other things, to transfer and deliver to itself, as trustee, the balance of the assets on hand. On October 13, 1937, a petition was filed by the trustee asking for a judicial settlement of its account as such and for a decree determining the true construction and effect of the will of the deceased which involved the scope of the authority of the trustee to invade the principal of the trust for the benefit of the widow of the deceased. In its account the trustee disclosed that, after making distribution as required by the provisions of the decree of July 5, 1934, and payment of its commissions and expenses, there remained in the corpus of the trust a small amount of cash and 310 shares of the capital stock of the American Telephone and Telegraph Company and a note asserted to be of no value. The account disclosed that the trustee had disbursed to the widow from the trust out of income from April 17, 1934, to August 11, 1937, the sum of $11,074.24 and, from the corpus of the trust, the sum of $1,900. In addition thereto she has not only been required to use all of her personal income, amounting to about $720 per year, but has also incurred unpaid obligations for her maintenance and care.

Certain of the remaindermen filed objections to the account and particularly to the propriety of the trustee paying over the $1,900 item out of the corpus of the estate for the benefit of the beneficiary. The learned Surrogate held that the testator provided for the payment to his widow of the entire income from the trust and so much of

the corpus as the trustee should, in its sole judgment, determine necessary for her every comfort and support and overruled the objections to the account. The Appellate Division reversed the Surrogate, sustained the objections to the expenditure from the principal .of the trust, and directed that " the item of $1,900 advanced by the trustee from the principal of the trust and the commissions deducted or allowed thereon be disallowed and that the trustee forthwith reimburse the principal of the trust estate by that amount with interest from the dates of withdrawal." It found that the trustee paid out the item of principal without " having made adequate investigation as to the necessity for an invasion of the principal " (254 App. Div. 932) and that it was careless and negligent in its administration of the trust by turning over the income and the principal (in part) to a niece of the beneficiary to disburse without adequate supervision on its part of the use thereof or security on the part of the niece. Except as to the item disallowed, it affirmed the decree of the Surrogate in allowing the account of the trustee. We cannot agree with the findings made or conclusions reached by the Appellate Division upon which it modified the Surrogate's decree.

The provisions of the will are not ambiguous, the intent of the testator is clear from the face of the instrument, and we may determine for ourselves what the instrument itself contains. Ascertainment of the intent of the testator as shown by his will, taken as a whole, is our primary purpose, and, when ascertained, is to prevail over all other canons of construction (*Matter of James*, 146 N. Y. 78, 100; *Matter of Buechner*, 226 N. Y. 440). The will clearly provides for payment by the trustee in quarterly installments of the entire income from the trust and of so much of the principal in addition thereto as, in the sole judgment of the trustee, shall by it be deemed necessary for every comfort and support of the widow. Her every care, comfort and support in the condition in life in which she was accustomed to live was obviously the testator's primary concern and gifts to others were clearly secondary. If by inapt or inaccurate

modes of expression or an expression, such as directs the trustee that it may keep the stock in the American Telegraph and Telephone Company intact as a part of his estate, other gifts are given preference, such expressions must be subordinated to the plain and definite purpose of the testator as he has expressed it in his will (*Phillips* v. *Davies*, 92 N. Y. 199). In conformity to that purpose and intent, the trustee is required to furnish every comfort and support for the widow which it may deem in a sound discretion necessary out of income and, if required, out of the corpus, even to the extent of exhausting the entire corpus of the trust, without taking into consideration or account the personal income of the beneficiary from any other source (*Holden* v. *Strong*, 116 N. Y. 471; *Rezzemini* v. *Brooks*, 236 N. Y. 184). What is necessary for that purpose is limited only by the amount of the income and the corpus of the trust. Whatever income the beneficiary may have from sources other than the trust is of no concern to the trustee in forming its judgment as to the amount necessary for her every comfort and support. The testator did not contemplate that his widow should be required to use her own personal income or to incur individual obligations for her comfort and support as long as there was anything in the trust that might, in the sound discretion of the trustee, be used for that purpose. In forming its judgment, the trustee must take into consideration the conditions under which she has been accustomed to live, her health and her every comfort and support, with a view of carrying out her husband's solicitude for her welfare and happiness after he had passed away. Exercise of ordinary care and a sound discretion in making its determination is all that is required of the trustee.

The widow of the testator is now seventy-eight years of age. For many years during the lifetime of the deceased he and his wife traveled extensively. Immediately upon his death Mrs. Clark became ill and she and her niece, Mrs. Marjorie Wells, went to California. Owing to the condition of her health, Mrs. Clark found it impracticable to return to her home in Baldwinsville until July 21, 1934. During

the period that she was in California she had medical attention and nursing and the constant care and attendance of her niece. Shortly after her return to Baldwinsville she became unable to manage herself or her affairs and has since been under the care of a physician and of nurses. Mrs. Wells, at her request, has lived with her and has had exclusive charge of the running of her home in which she lived and of the management of all of her business affairs. The brother of Mrs. Wells has also been with the widow at her special request and has acted as general caretaker around the large house which had been maintained by her husband in his lifetime. We may infer that this home was in the name of the husband and wife as tenants by the entirety. The brother took the place of a chauffeur who had been maintained as part of the establishment of the deceased. Additionally there was a woman employed three days per week at one dollar per day to assist in the heavy work. Mrs. Clark's condition became such that constant nursing attention day and night has been required. Mrs. Wells has received no pay for her services; the others were paid for their services and all received board and lodging. The estimate of the trust officer in charge of the trust as to the needs of the beneficiary was at least four thousand dollars per year. There is no evidence in the case to indicate that the expenditures which have been made for the beneficiary were either improvident or contrary to the provisions of the will.

Under the terms of the will the trustee could not delegate the duty of exercising its own judgment as to the amount to be expended for the every comfort and support of the widow (*Matter of Wilkin*, 183 N. Y. 104; *City Bank Farmers Trust Co.* v. *Smith*, 263 N. Y. 292, 295; *Matter of Osborn*, 252 App. Div. 438; American Law Institute, Restatement of the Law of Trusts, § 187). The trustee exercised its own judgment as to the propriety of the expenditures made on the basis of representations by Mrs. Wells and of others and upon the knowledge of some of its officers of the condition of the beneficiary and of the general requirements for her

maintenance under the conditions existing and in the condition of life in which she had been accustomed to live. It did not personally examine into and personally and separately make each item of expenditure. Checks to the order of Mrs. Clark were made by the trustee and sent to Mrs. Wells, who deposited them in the Baldwinsville bank in the account of Mrs. Clark and the moneys so deposited were thereafter withdrawn from time to time by Mrs. Wells under power of attorney from the beneficiary made in 1934. The trustee did not in advance require an itemized statement of the requirements of the household of the beneficiary or make pre-audit of each expenditure, but did require statements from Mrs. Wells generally itemizing expenditures for various purposes. The items contained in these statements, upon examination by the trustee, were judged by it to be necessary for the comfort and support of the beneficiary and were by it approved. The record establishes without any reasonable inference open to the contrary that the duty of the trustee was reasonably performed with ordinary care and with sufficient knowledge of all the facts to enable it to exercise its own judgment as to the proper expenditures to be made or obligations to be incurred for the benefit of Mrs. Clark. In that connection it prudently exercised its own judgment. It was not bound personally to scrutinize and pass upon every small item of expenditure before it was made under the facts appearing in this case. Coupled with its own general knowledge of the situation and the needs of the beneficiary it was entitled to rely upon the representations of Mrs. Wells as to the details of the expenditures required. We find no abuse of discretion and no evidence of bad faith or that the trustee administered the trust in a careless or negligent manner. It appears that no committee has been appointed of either the person or estate of Mrs. Clark, but that fact has no bearing upon any issue involved in this case.

The Surrogate authorized the trustee to sell the American Telephone and Telegraph stock. We understand that that provision of the decree means that it shall be sold only as

the trustee may deem such sales necessary from time to time to meet its obligations under the provisions of the will for the benefit of the widow.

The order of the Appellate Division should be modified in accordance with this opinion, and, as so modified, affirmed, with costs in this court and in the Appellate Division to all parties separately appearing and filing briefs, payable out of the estate.

CRANE, Ch. J., LEHMAN, O'BRIEN, HUBBS, LOUGHRAN and FINCH, JJ., concur.

Ordered accordingly.