In the Matter of the Accounting of KATHRYN P. BENDER et al., as Executors of EDWARD A. BENDER, Deceased.

Surrogate's Court, Westchester County, April 30, 1951.

*Elfers & Trebing* for executors.

*Francis P. Brady,* special guardian.

GRIFFITHS, S. In this accounting proceeding, the executors request a construction of paragraphs " First ", " Third ", and " Fifth (d) (2) " of the testator's will.

Paragraph " First " directs that " all estate and inheritance taxes chargeable against any beneficiary of this, my Will, shall be paid out of my estate, my intention being that the legacies and gifts herein shall be free and discharged of any and all taxes ". A question is raised whether the Federal and New York estate tax apportionable to the proceeds of several of decedent's life insurance policies, payable to his wife, should be paid out of the testamentary estate or by the beneficiary. Section 124 of the Decedent Estate Law requires apportionment of estate taxes in the absence of testamentary directions to the contrary. The evidence of such an intention must be clear and unambiguous. (*Matter of Mills,* 189 Misc. 136, affd. 272 App. Div. 229, affd. 297 N. Y. 1012.) The testator's direction that such taxes be paid out of his estate was specifically limited to testamentary legacies and gifts. The court holds that the direction against apportionment does not extend to the insur-

ance policy proceeds and therefore the estate taxes apportionable to such proceeds are payable by the testator's widow. (*Matter of Kalik,* 179 Misc. 872; *Matter of Lassere,* 195 Misc. 771.)

By paragraph " Third " of his will, the testator created a residuary trust for the benefit of his wife and provided that if the income therefrom was insufficient in the judgment of the trustees " to maintain her [his widow], in the station of life to which she has been accustomed ", the trustees were to pay " so much of the principal of my residuary estate as may be required by my said wife, not exceeding, however, the sum of Three Thousand ($3,000.00) Dollars in any one twelve month period ". The testator nominated his wife and a corporate fiduciary as trustees and both have duly qualified and are acting as such.

The court holds that the discretionary power to invade principal cannot be participated in by the income beneficiary as trustee, but must be exercised solely by the corporate cotrustee. (Real Property Law, § 141; *Matter of Atkins,* 193 Misc. 273.) In exercising such discretion the corporate trustee need not consider the income beneficiary's independent means or income. The will clearly discloses that the testator's widow was the primary object of his bounty and that her support in the style to which she was accustomed, was to be borne by trust income and principal, where necessary, limited, however, to $3,000 in any one year. (*Matter of Clark,* 280 N. Y. 155; *Matter of Coghlan,* 72 N. Y. S. 2d 778; *Matter of Hart,* 189 Misc. 171.) Since the power of invasion is limited to $3,000 " in any one twelve month period ", it is not cumulative. (*Matter of Vernon,* 62 N. Y. S. 2d 683.)

The power to invade principal rests in the discretion of the corporate cotrustee. It cannot be exercised solely upon the request of the income beneficiary. The corporate cotrustee has the duty to investigate and determine the amount of principal required, together with the income of the trust, to maintain the income beneficiary " in the station of life to which she has been accustomed ". (*Matter of Clark, supra;* cf. *Matter of Woollard,* 295 N. Y. 390.)

Paragraph " Fifth " of the will authorizes the trustees to invest up to 50% of trust principal " in securities of any kind which would, except for this authority, otherwise be deemed improper or illegal investments for Trustees." In view of the recent amendment to section 21 of the Personal Property Law,

a construction as to the testamentary investment power and the effect thereon of the aforesaid statute is requested.

The court construes the testamentary power so granted to include " non-legals " or common and preferred stocks, as well as secured investments. (*Matter of Vanderbilt,* 132 Misc. 150, 154.) Paragraphs (a) through (l) of subdivision 1 of the amended statute specify the classes of securities in which fiduciaries may invest, in the absence of any testamentary extension or restriction of such statutory power. Paragraph (m) of the statute permits a fiduciary to invest up to 35% of principal, based on the aggregate market value of the fund, in " ineligible " investments, including securities of private corporations. In *Matter of Peck* (199 Misc. 1051), Surrogate COLLINS stated that the enactment of the statute resulted in the creation of four classes of investments, namely: " legals ", " eligibles ", " ineligibles " and " non-legals ". He pointed out that all of the statutes defining " legal " investments for fiduciaries were not expressly repealed when section 21 was amended. (See L. 1950, ch. 464.) Chapter 627 of the Laws of 1951, effective April 7, 1951, amended paragraph (m) of subdivision 1 of section 21 of the Personal Property Law. The amendment provides that in determining both the aggregate market value of the fund and the 35% limitation, " the value of any investment in a legal common trust fund made pursuant to the banking law " must be excluded. It appears therefore, that the Legislature distinguishes between " legal " and " eligible " investments and that at least four classes of investments exist under present New York law. However, the provisions of paragraphs (a) through (l) of the statute include in the " eligible " category not only the investments prescribed in the statutes expressly repealed or amended, but also investments made legal for fiduciaries by other statutes to which no express reference was made. It would appear that the 1950 legislation was designed to include in one statute a comprehensive itemization of " legal " investments for fiduciaries theretofore found in several statutes. The 1951 amendment actually creates a fifth class of investments, in that legal common trust fund investments although " legal ", are neither " eligible " nor " ineligible ". The resulting confusion may, with advantage, be resolved by further legislative action.

In *Matter of Hilliard* (197 Misc. 1094) the trustees were granted a testamentary power to invest the entire trust fund in specified "eligibles " and " ineligibles ". This court held

that the amendment to section 21 of the Personal Property Law extended the testamentary power to invest in certain " ineligibles " so that the trustees were empowered to invest 35% of the fund in any " ineligibles " within the meaning of the statute. However, in computing the 35%, all " ineligible " investments, including those authorized under the will, had to be charged against the 35% limitation.

The statute contemplates granting the power to invest in " ineligibles " to fiduciaries who have no testamentary investment power and those whose power to invest in other than " eligibles " is limited, by the terms of the will, to less than 35% of the aggregate market value of the fund. The statutory power does not serve to extend or broaden a testamentary power to invest in " non-legals ", including " non-eligibles ", in excess of the 35% limitation. (*Matter of Hilliard, supra; Matter of Peck, supra.*)

Accordingly, the court holds that the trustees herein have testamentary power to invest, in their discretion, up to 50% of the aggregate value of the fund in " non-legals ", including, but not restricted to, " ineligibles " specified in section 21 of the Personal Property Law.

Submit decree accordingly.