DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**DORIS RICH CORYA,** as Trustee of the Sanders Trust, **DORIS RICH CORYA** and **PAUL J. RICH SANDERS** as Trustee of the Eleanor M. Rich Trust, **DORIS RICH CORYA** as Trustee of the John P. Corya Irrevocable Trust, and **DORIS RICH CORYA** as Trustee of the John P. Corya Revocable Trust,
Appellants,

v.

**ROY SANDERS,**
Appellee.

Nos. 4D12-3067 and 4D12-3926

[February 11, 2015]

***ON MOTION FOR REHEARING***

Consolidated appeals from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Diana Lewis, Judge; L.T. Case No. 502008CP000957XXXXMB.

Marjorie Gadarian Graham of Marjorie Gadarian Graham, P.A., Palm Beach Gardens, for appellants.

Susan B. Yoffee of Haile, Shaw & Pfaffenberger, P.A., North Palm Beach, for appellee.

CONNER, J.

We deny the Appellant's motion for rehearing, withdraw our opinion dated November 5, 2014, and issue the following in its place:[1]

---

[1] We amend the first two sentences in the last paragraph before the "Conclusion" section of our previous opinion and also add a footnote to that paragraph.

After issuance of our previous opinion, Sanders moved for certification that our opinion conflicts with *Taplin v. Taplin*, 88 So. 3d 344 (Fla. 3rd DCA 2012). We decline to certify conflict because there is no discussion of statutory laches, section 95.11(6), Florida Statutes, in *Taplin*. Moreover, the only mention of *Taplin* in the answer brief is one quotation from *Taplin* in footnote. In addition to not addressing the application of statutory laches to trust proceedings, *Taplin*

In this case, ongoing disputes as to four family trusts make a second appearance before us. In the first appeal, we reversed the trial court's summary judgment granting trust accountings for all four trusts. *Corya v. Sanders*, 76 So. 3d 31 (Fla. 4th DCA 2011). We concluded the trial court erred in granting summary judgment in part because appellee Sanders did not sufficiently negate the defenses of laches, waiver, and estoppel. *Id.* at 34. As to two of the trusts, we also concluded that the record did not establish, for purposes of summary judgment, that the contesting beneficiary was entitled to accountings prior to 2007. *Id.* Upon remand, a nonjury trial was conducted.

In this appeal, appellants, Doris Corya and Paul J. Rich Sanders (collectively, "Corya"),[2] as trustees, raise several arguments of trial court error. Roy Sanders ("Sanders"), the appellee and contesting beneficiary, is Doris's son and Paul's brother. We agree with Corya that the trial court erred by (1) determining that the affirmative defense of statutory laches did not limit the years to which Sanders is entitled to an annual accounting for each trust; (2) incorrectly interpreting statutory provisions in deciding the starting date for each accounting; and (3) incorrectly applying case law in deciding the starting date for each accounting. For those reasons, we reverse and remand for further proceedings. Because we reverse on significant issues affecting entitlement to attorney's fees, we also reverse and remand the trial court rulings on attorney's fees for further consideration.

*Factual Background and Trial Court Proceedings*

The disputes revolve around four irrevocable family trusts. The trusts will be referred to separately as "the Sanders Trust," "the Rich Trust," "the John Corya Revocable Trust" (which later became irrevocable) and "the John Corya Irrevocable Trust."

The Sanders Trust was created in 1953 by Eleanor Rich. Eleanor was Doris's mother and Sanders's grandmother. The trust directs that Doris is to receive ninety-four percent of the net income during her lifetime, and each of Doris's three children is to receive two percent of the net income. Upon Doris's death, the principal of the trust is to be distributed in equal

---

addressed dismissal of a complaint at the pleading stage; it did not address the application of limitation of action statutory provisions to facts presented at an evidentiary hearing.

[2] Doris is the sole trustee for three of the trusts and a co-trustee for the fourth trust. Paul, her son, is a co-trustee of the fourth trust.

shares to Doris's three children. Doris has been the sole trustee from inception of the trust.

The Rich Trust is a testamentary trust created upon the death of Eleanor in 1974. The trust provides that during Doris's lifetime, the net income is to be distributed to her, and the principal can be invaded for her benefit. The principal of the trust can also be invaded for the benefit of her three children. Upon Doris's death, the remaining principal is to be divided into shares for each of her three children, and the trust for each child is to continue until the child has attained the age of thirty.[3] From inception, Doris has been a co-trustee of the Rich Trust.

Doris married John Corya. In 1993, John created two trusts, one revocable, the other irrevocable. As to both, John and Doris were the initial co-trustees, and upon John's death, Doris has been the sole trustee.

The John Corya Revocable Trust began with John as the sole beneficiary during his life. Upon his death in 1996, the trust continued as an irrevocable trust for the benefit of Doris, her three children, and two grandchildren. During Doris's lifetime, the net income is to be distributed to her, and the principal can be invaded for her benefit. Under certain circumstances, the principal of the trust can also be invaded for the benefit of each of her three children. Upon Doris's death, the remaining principal is to be divided between her three children and two grandchildren.

The John Corya Irrevocable Trust provides that the income is payable solely to John while he is alive and then solely to Doris while she is alive. The Irrevocable Trust allows for invasion of the principal for the benefit of John and Doris, and upon the death of both, the remaining principal is to be distributed to Doris's three children and two grandchildren.

Only the two John Corya trusts contain provisions regarding the trustee's duty to account to the beneficiaries.

As summarized in the first appeal:

> Roy [Sanders] filed a second amended complaint seeking to compel an annual accounting of the four trusts. Doris answered, denying most material allegations and alleging various affirmative defenses, including statute of limitations, and an allegation of waiver[, laches,] and estoppel alleging that the trusts have been in existence thirty years, and by his conduct Roy should be estopped from demanding any

---

[3] All three of Doris's children are over thirty years old.

accounting prior to 2008. After some discovery, Roy moved for summary judgment. The trial court granted the motion finding that Doris had the duty to provide Roy with periodic written accountings on all the trusts, which she failed to do. The court ordered her to provide accountings for all trusts and granted Roy's motion for attorney's fees, which she was not permitted to use trust funds to pay.

*Corya*, 76 So. 3d at 33. After the nonjury trial on remand, as to all four trusts, the trial court ordered Corya to prepare accountings from the date she assumed duties as trustee, which was the inception of each trust. In so ruling, the trial court determined that Corya's affirmative defense of statutory laches did not apply. The trial court also apparently interpreted statutory provisions and case law to determine the starting date for each accounting. In addition, the trial court awarded Sanders attorney's fees, both for trial and the prior appeal. The trial court again ordered that Corya was not permitted to use trust funds to pay Sanders's attorney's fees, thus making her personally liable for the fees. Lastly, the trial court required Corya to reimburse the trusts for trust funds used to pay her attorney's fees.

## *Legal Analysis*

After a nonjury trial, review of trial court decisions based on legal questions are reviewed *de novo* and those based on findings of fact from disputed evidence are reviewed for competent, substantial evidence. *Acoustic Innovations, Inc. v. Schafer*, 976 So. 2d 1139, 1143 (Fla. 4th DCA 2008); *In re Estate of Sterile*, 902 So. 2d 915, 922 (Fla. 2d DCA 2005).

In order to explain the errors of the trial court, it is appropriate to first discuss the statutory duty imposed on trustees of irrevocable trusts to account to the beneficiaries, next discuss the application of statutory laches to the duty to account, and conclude by discussing the errors of the trial court in determining the starting dates for the accountings.

### The Statutory Duty to Account Applicable to this Case

As described above, all four trusts are irrevocable and have been in effect for decades before suit was filed. It is undisputed that before suit was filed, Corya had not prepared accountings for any of the trusts. At trial and on appeal, Corya agreed she was required to provide annual accountings to the beneficiaries as of July 1, 2007, the effective date of section 736.0813(1)(d), Florida Statutes (2007), which provides:

> **Duty to inform and account**.--The trustee shall keep the qualified beneficiaries of the trust reasonably informed of the trust and its administration.
>
> (1) The trustee's duty to inform and account includes, but is not limited to, the following:
>
>  . . . .
>
> (d) A trustee of an irrevocable trust shall provide a trust accounting, as set forth in s. 736.08135, to each qualified beneficiary annually and on termination of the trust or on change of the trustee.

Corya disputed that she had a duty to give accountings to Sanders for the years preceding 2007, contending there was no statutory duty to provide accountings for the prior years.

Prior to July 1, 2007, the statute controlling the duty of a trustee of an irrevocable trust to account to beneficiaries was section 737.303, Florida Statutes (2006), repealed the same year that section 736.0813 was passed. Comparing section 736.0813 with section 737.303, it is obvious that the duty of a trustee to account for an irrevocable trust from 1974 (the year in which section 737.303 was enacted) to June 30, 2007, was virtually identical to the duty to account starting July 1, 2007. Former section 737.303, Florida Statutes (2006), imposed the following duty to account:

> **Duty to inform and account to beneficiaries**.--The trustee shall keep the beneficiaries of the trust reasonably informed of the trust and its administration.  In addition:
>
>  . . . .
>
> (3) A beneficiary is entitled to a statement of the accounts of the trust annually and on termination of the trust or change of beneficiary.

Although the current section 736.0813 limits the duty to account to "qualified beneficiaries," the definition of "qualified beneficiaries" is virtually the same as the definition of "beneficiary" and "vested

5

beneficiary," as interpreted by case law, in the repealed section 737.303. *See* §§ 736.0103(14), Fla. Stat. (2007), 737.303(4)(b), Fla. Stat. (2002). [4]

We thus reject Corya's arguments that there was no statutory duty to provide Sanders with accountings prior to July 1, 2007.

*Statutory Laches as a Bar to Trust Accountings Beyond Four Years*

As to all four trusts, Corya raised the affirmative defense of laches. Regarding the Sanders Trust, the trial court explicitly ruled that "laches" did not apply, after determining that Sanders's testimony was credible when he testified that he did not know he was entitled to an accounting until he met with a Florida attorney in April 2007. As to the other three trusts, the judgment does not explicitly state "laches" did not apply; however, the trial court implicitly ruled such by granting accountings for each trust from the inception of Corya's duties as trustee.

The trial court noted in the final judgment that the affirmative defense of laches, pursuant to section 95.11(6), Florida Statutes (2008), was an issue to be tried. We have previously held that section 95.11(6), referred

---

[4] Although section 737.303 was first enacted in 1974, the version of the statute quoted was amended in 1977 to change the subsection number to (4) and to provide:

> (4)  A *vested* beneficiary is entitled to a statement of accounts of the trust annually and upon termination of the trust or upon a change of the trustee.

(emphasis added).  In 2002, the statute was amended further to provide:

> (4)(a)   A beneficiary is entitled to a trust accounting, as set forth in s. 737.3035, annually and upon termination of the trust or upon change of the trustee except as provided under paragraph (c) [describing the duty to account during the grantor's lifetime].

> (b)  For purposes of this section, the term "beneficiary" means:

> 1.  All current income or principal beneficiaries, whether discretionary or mandatory; and

> 2.  All reasonably ascertainable remainder beneficiaries who would take if all income interests immediately terminated.

to as "statutory laches,"[5] applies to an action for an accounting by a trustee. *Patten v. Winderman*, 965 So. 2d 1222, 1225 (Fla. 4th DCA 2007). Section 95.11(6), Florida Statutes (2008), states:

> (6) Laches.--Laches shall bar any action unless it is commenced within the time provided for legal actions concerning the same subject matter regardless of lack of knowledge by the person sought to be held liable that the person alleging liability would assert his or her rights and whether the person sought to be held liable is injured or prejudiced by the delay. This subsection shall not affect application of laches at an earlier time in accordance with law.

Prior to Sanders filing suit, Corya had not prepared accountings for any of the trusts. Failure to prepare an accounting is a breach of trust by a trustee. § 736.1001(1), Fla. Stat. (2008). The failure is also referred to as a breach of fiduciary duty. *McCormick v. Cox*, 118 So. 3d 980, 986-87 (Fla. 3d DCA 2013) (holding that evidence that trustee filed no annual accounting was competent substantial evidence of a breach of fiduciary duty). A breach of trust or fiduciary duty is the equivalent of at least a negligent tort, and, under certain facts, may be an intentional tort. The breach may result in an award of damages against the trustee personally. §§ 736.1002(1), 736.1013(2), Fla. Stat. (2008).[6] Regardless of whether the breach is deemed to be the result of negligence or an intentional act, the statute of limitations for a legal action alleging breach of trust or fiduciary duty is limited to four years.[7] §§ 95.11(3)(a), (o), (p), Fla. Stat. (2008). Because an action for accounting seeking to enforce a breach of trust or fiduciary duty entitles a beneficiary to damages, the application of section

---

[5] In *Corinthian Investments, Inc. v. Reeder*, 555 So. 2d 871, 872 (Fla. 2d DCA 1989), the Second District referred to section 95.11(6) as "statutory laches." *See also Nayee v. Nayee*, 705 So. 2d 961, 963-64 (Fla. 5th DCA 1998) (discussing the inapplicability of section 95.11 to actions against trustees until amended in 1974 to add section 95.11(6)).

[6] From the award of attorney's fees granted by the trial court, it is clear that Sanders is seeking monetary awards against Corya personally. Counsel for Sanders conceded in oral argument that Sanders intends to pursue further awards of damages against Corya personally for misconduct as trustee, as established by the accountings, once all the accountings have been completed.

[7] We recognize that section 736.1001, Florida Statutes, effective since 2006, provides for a number of remedies other than damages for a breach of trust. We do not contend that section 95.11(6) applies to such remedies. However, section 95.11(6) does apply to any action seeking monetary awards against the trustee.

7

95.11(6) bars an action seeking an accounting from a trustee more than four years before the action is filed.[8]

Even if the trial court's conclusion in the judgment "that the doctrine of laches does not apply" was a reference to "common law laches," the conclusion, grounded on the finding that "[Sanders]'s testimony [was] credible that he did not know he was entitled to an accounting until he met with a Florida attorney in April, 2007," was not a correct application of the defense of common law laches. The elements of common law laches are (1) "conduct on the part of the defendant . . . giving rise to the situation of which complaint is made"; (2) "the plaintiff, having knowledge or notice of the defendant's conduct, and having been afforded the opportunity to institute suit, is guilty of not asserting his rights by suit"; (3) "lack of knowledge on the part of the defendant that plaintiff will assert the right on which he bases his suit"; and (4) "injury or prejudice to the defendant in event relief is accorded to the plaintiff, or in the event suit is held not to be barred." *Van Meter v. Kelsey*, 91 So. 2d 327, 330-31 (Fla. 1956).

Sanders does not dispute that he had actual knowledge that he was a beneficiary of all four trusts for many years before filing suit against Corya. What he claimed at trial and on appeal is that he did not have actual knowledge he was *entitled to accountings* for each trust until he consulted with a Florida attorney in April 2007. He presented no evidence, and the trial court made no finding, that Corya engaged in conduct that duped Sanders into thinking he was not entitled to accountings or lulled him into not taking legal action to seek accountings. As the trial court found, Corya periodically showed Sanders statements for some of the trusts and discussed the trusts with him, but he was not interested in viewing the information. His failure to know the law or consult with an attorney is not a lack of actual knowledge of the facts (no accountings given to him) upon which the claim is based. *See* § 95.031, Fla. Stat. (2008) (stating a cause of action accrues when the last element constituting the cause of action occurs). Knowledge of the law is not an element to be proven to establish entitlement to an accounting by a trustee. Sanders's lack of knowledge of the law had nothing to do with his knowledge that the accountings were not being given to him each year. The law required the accountings and gave Sanders the right and opportunity to file suit. Research has not

---

[8] Even though an action for an accounting is considered an equitable proceeding, it has the features of a legal action. § 736.0106, Fla. Stat. (2008) ("The common law of trusts and principles of equity *supplement* this code, except to the extent modified by this code or another law of this state.") (emphasis added). "An action for an accounting was formerly cognizable both at law and in equity." *Nayee*, 705 So. 2d at 963 (citing *Campbell v. Knight,* 92 Fla. 246, 109 So. 577 (1926)).

revealed a Florida case which holds that a lack of knowledge of the law is grounds to extend the period for laches or toll the running of the statute of limitations. The trust statutes afforded Sanders the right to file suit for an accounting as early as 1974. §§ 737.303, 737.201(1), Fla. Stat. (1974). There was no evidence that Sanders gave notice to Corya that he wanted to assert his right to annual accountings until suit was filed in 2008. The transcript of the final hearing and closing arguments reveal that the trial court was very much concerned about the prejudice of requiring Corya to construct accountings for trusts that were decades old at the time of trial. Nonetheless, the trial court concluded laches did not apply because Sanders was not aware of the law. This was error.

We thus conclude, *on the facts of this case*, that statutory laches under section 95.11(6) limits the right to an accounting, where no accounting has been done, to no more than four years before filing an action for an accounting against the trustee of an irrevocable trust. Lastly, we address the starting date for the accountings when no accountings had been done.

## *Starting Date for an Accounting When No Accounting Has Been Done*

As to each trust, the trial court ordered accountings from the inception of the trust. It appears from the judgment that the trial court accepted Sanders's arguments that accountings from inception were appropriate based on (1) an interpretation of sections 736.0813(1)(d) and 736.08135(1), Florida Statutes (2007), and (2) misconduct by Corya as trustee, citing *Mesler v. Holly*, 318 So. 2d 530 (Fla. 2d DCA 1975). We address each argument in turn.

### *Sections 736.0813(1)(d) and 736.08135(1)*

At the beginning of the judgment, the trial court listed the issues to be tried. One of the issues listed was:

> Whether Florida Statute Section 736.0813, formerly Florida Statute Section 733.035, limits the accountings to a period beginning on or after January 1, 2003.[9]

Section 736.0813 incorporates by reference section 736.08135(1), Florida Statutes (2007). In reference to the John Corya Irrevocable Trust, the trial court ruled "the accounting should go back to when [Corya] became accountable, which would be the inception of the trust," citing section

---

[9] The correct statutory references are section 736.08135(1) and section 737.3035(1) (now repealed), respectively. Section 736.08135(1) was formerly section 737.3035(1).

736.08135(1), Florida Statutes (2007). It appears the trial court may have implicitly reached the same conclusion as to the other three trusts.

As discussed above, section 736.0813(1)(d) provides that a beneficiary is entitled to a trust accounting "annually," "as set forth in s. 736.08135." Section 736.08135(1), Florida Statutes, provides:

> (1) A trust accounting must be a reasonably understandable report from the date of the last accounting or, *if none, from the date on which the trustee became accountable*, that adequately discloses the information required in subsection (2).

(emphasis added). Because accountings had never been prepared for any of the trusts, the trial court concluded Corya was statutorily required to start the accountings for each trust from the dates Corya became trustee, which was the inception of each trust. However, the trial court erred because, as discussed above, the trial court failed to properly apply the laches defense, which limits the duty to account to no earlier than four years prior to the date suit was filed, and because another subsection of section 736.08135, subsection (3), does not require accountings prior to January 1, 2003.[10]

Section 736.08135(3), Florida Statutes (2007), states:

> This section applies to all trust accountings rendered for any accounting periods beginning on or *after January 1, 2003*.

(emphasis added). Because section 736.08135 became effective on July 1, 2007, we construe the combination of subsections (1) and (3) to be a clear legislative statement that trustees of irrevocable trusts could not be statutorily required to render accountings prior to January 1, 2003. In other words, we construe section 736.08135(3) to be consistent with statutory laches under section 95.11(6). Moreover, as to trusts existing prior to January 1, 2003, we do not construe the language, "*if none, from the date on which the trustee became accountable*," as expressing a legislative intent that if an accounting had never been done, the trustee's first accounting must go all the way back to the date the trustee assumed fiduciary duties. Instead, we construe that language as limiting the

---

[10] Because it was not briefed, we do not address whether the annual accountings should have been on a calendar-year basis (in which case the accounting for the initial calendar year may be for less than a twelve-month period, depending on what month suit was filed) or on a twelve-month basis. Section 736.0813(1)(d), which creates the statutory duty to account, simply provides accountings must be *at least annually*.

10

beginning period for the first accounting, in situations where an accounting had never been done or was not prepared annually, to be no earlier than January 1, 2003, as stated in section 736.08135(3), Florida Statutes (2007).

To construe the statutory language as the trial court did would result in an impermissible statutory impairment on the obligations of contracts. When Corya accepted the duties and responsibilities of trustee, she agreed to be bound by the trust instrument either expressly, if she signed the trust document as trustee, or impliedly. She was entitled to rely on existing law and the statements in the trust documents, or lack thereof, regarding any responsibility to render accountings. The Sanders and Rich Trusts imposed no requirement for the trustee to account to the beneficiaries. By imposing a *statutory* requirement to account annually and limiting the dates of the applicability of the statute, the legislature clearly recognized that without some limitations, the new statutory duty could impermissibly impair the contractual duty (or lack of duty) to account in existing trust documents. Art. I, 10, Fla. Const. ("No bill of attainder, ex post facto law or law impairing the obligation of contracts shall be passed.")*; see also Castellano v. Cosgrove*, 280 So. 2d 676 (Fla. 1973); *Lawnwood Med. Ctr., Inc. v. Seeger*, 959 So. 2d 1222, 1224 (Fla. 1st DCA 2007) (explaining that an impairment occurs "when a contract is made worse or is diminished in quantity, value, excellence or strength"). Finally, if the trustee is required to account from the inception of the trust, this would negate the laches defense.

*The* Mesler *Case*

In *Mesler*, the appellants filed a declaratory action as to whether they had the right, as remainder beneficiaries of a trust, to obtain an accounting from the trustee, who was also the sole beneficiary of the trust until her death. *Mesler*, 318 So. 2d at 532. The appellants also sought removal of the trustee. *Id.* at 531-32. After the trial court dismissed the complaint, the appellants appealed. *Id.* at 532. The Second District held:

> We hold, therefore, that allegations that a trustee is the sole lifetime beneficiary, that she has not furnished any accounts or reports of her administration to the remaindermen and that she is not confining her invasions of principal to reasonable limits, as may be set out in the complaint, give rise to an inference of abuse of discretion by the trustee and are sufficient to require the trustee to respond. Trustees are accountable to the courts and their performance may be controlled by the courts.

*Id.* at 533.

The judgment in this case gave the trial court's analysis for each trust separately. In the analysis for each trust, the trial court cited *Mesler*. There are clear indications in the judgment that the trial court cited *Mesler* as authority for requiring an accounting, in addition to any statutory requirement. However, it appears the trial court may also have cited to *Mesler* as authority for requiring Corya to render an accounting for each trust all the way back to the date she assumed duties as trustee. The case is not authority for requiring an accounting "from [the trust's] inception," as ordered in this case. More importantly, however, there was no issue of laches discussed by the court in *Mesler*.

Our analysis that statutory laches under section 95.11(6), Florida Statutes (2008), limits the right to an accounting when no accounting has been done is not altered by *Mesler*, which was decided approximately one year after section 95.11(6) became effective and statutory laches was not discussed.[11] Clearly, Sanders had actual knowledge he had not received accountings for more than four years before he filed suit. Thus, we conclude it was error for the trial court to rely on *Mesler* as grounds for requiring accountings beyond four years before suit and as grounds for ordering accountings from the inception of each trust.

*Conclusion*

Having determined the trial court erroneously denied the defense of statutory laches, and incorrectly applied statutes and case law in determining the starting dates for accountings for each trust, we reverse and remand for further proceedings. Because we reverse on significant issues affecting the entitlement to attorney's fees, we also reverse and remand the rulings on attorney's fees for further consideration.

*Reversed and remanded.*

FORST, J., concurs.
WARNER, J., concurring in part and dissenting in part.

I concur in the majority opinion, except as to the two Corya trusts. Each of those trusts had a provision that required annual accountings by the trustee to be provided to "beneficiaries eligible within the period covered thereby to receive benefits from the trust which is the subject of

---

[11] Because it was not addressed in the briefs, we do not discuss the application of section 736.1008, Florida Statutes (2008), and its predecessor, section 737.307, to any alleged misconduct by Corya.

12

said account."  In other words, if a beneficiary was not entitled to a distribution during the accounting period, that beneficiary was not entitled to receive or inspect the annual accounting.  As to both trusts, Sanders did not prove that he was eligible to receive any benefits from the trust during any annual period.  Since the trust had an express provision which did not require an accounting to Sanders, the trustee was not compelled to furnish an accounting until the enactment of section 736.0105(2)(s), Florida Statutes, in 2007.  That statute provided that a trust provision could not prevail over the duty to account pursuant to section 736.0813(1)(c) and (d).  As Sanders met the statutory definition of a qualified beneficiary, he was entitled to an accounting, even though the trust provided otherwise.  Therefore, I would hold that the trustee had no duty to provide accountings prior to the effective date of the statute.

*     *     *

***Not final until disposition of timely filed motion for rehearing.***

13