DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**REBECCA RACHINS** and **RICHARD MINASSIAN,**
Appellants,

v.

**PAULA M. MINASSIAN,** individually, and as Trustee of the Zaven
Minassian Trust dated December 29, 1999, as amended and restated
July 16, 2008, and **THE ANDERSEN LAW FIRM, PC,**
Appellees.

No. 4D17-2005

[ July 11, 2018 ]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit,
Broward County; Charles M. Greene, Judge; L.T. Case No. PRC 12-1320.

James A. Herb of the Herb Law Firm, Chartered, Boca Raton, for
appellants.

Thomas F. Luken of The Andersen Law Firm, Fort Lauderdale, for
Appellee Paula M. Minassian.

Donald H. Benson of Bradham, Benson, Lindley, Blevins, Bayliss &
Wyatt of Florida East Coast, P.L.L.C., Fort Lauderdale, for Appellee The
Andersen Law Firm, P.C.

TAYLOR, J.

The decedent's adult children, Rebecca Rachins and Richard Minassian
(hereinafter the "children"), appeal a partial final order dismissing multiple
counts of their Amended Trust Complaint on the ground that they lacked
standing to bring any claims against Paula Minassian, who was the
decedent's wife at the time of his death, or against the Andersen Law Firm,
the attorneys who prepared the relevant trust document.[1]  We reverse,

---

[1] Contrary to the parties' representations in this appeal, the order did not have
the effect of resolving all of the children's claims against the Andersen Law Firm.
However, the order did have the effect of terminating the action as to Paula
Minassian.  Thus, to the extent the order disposed of the entire action as to Paula

concluding that the children are qualified beneficiaries of the Family Trust and therefore have standing to challenge the wife's administration of the Family Trust.

Most of the salient facts of this case are set forth in our opinion in *Minassian v. Rachins*, 152 So. 3d 719 (Fla. 4th DCA 2014). Zaven Minassian (the "husband") executed a Restatement of Trust in 2008, which superseded an earlier 1999 trust document. *Id.* at 720. In the 2008 Restatement of Trust document (the "original trust document"), the husband created a revocable trust (the "original trust"), which would become irrevocable upon his death. *Id.* The husband and the wife were the sole trustees of the original trust. *Id.*

The husband died in 2010. *Id.* Because the wife survived the husband, and because the federal estate tax was not in effect at the time of the husband's death, the original trust document directed that all remaining trust property be distributed to a Family Trust. *Id.* at 721.

The original trust document empowered the wife, as trustee, to distribute income and principal of the Family Trust to herself, in her sole and absolute discretion, for her "health, education, and maintenance." *Id.* Upon the death of the wife, the Family Trust would terminate, and the remainder of the Family Trust would be divided into a separate trust share for each of the children. *Id.*

Soon after the husband's death in 2010, the children filed a complaint against the wife, alleging that she was improperly administering the Family Trust. *Id.* at 720. The wife moved to dismiss the children's complaint, arguing that they lacked standing because they were not beneficiaries of the Family Trust. *Id.* at 721. The children countered that they had standing because the trust provisions did not create a new trust, but instead created separate shares in the existing Family Trust for each child upon the wife's death. *Id.* The trial court denied the motion to dismiss. *Id.*

The wife later appointed a "trust protector," as allowed by the terms of the original trust. *Id.* at 722. The trust protector was authorized to amend the provisions of the original trust if the amendment would either benefit the beneficiaries or further the husband's probable wishes. *Id.* Accordingly, the trust protector purported to amend the original trust to

Minassian, this court has jurisdiction. *See* Fla. R. App. P. 9.030(b)(1)(A) & Fla. R. App. P. 9.110(k).

clarify that, if there was any property remaining upon the death of the wife and the termination of the Family Trust, the remaining property would be disbursed to a new trust to be created for the benefit of the children. *Id.*

The children challenged the validity of the trust protector's amendments, and both sides eventually moved for summary judgment as to the validity of the amendments. *Id.* The trial court found that the original trust document was unambiguous, that only one trust (the Family Trust) was intended after the husband's death, and that the trust protector had no authority to change the terms of the original trust. *Id.* at 720, 723, 725–26. The trial court therefore entered partial summary judgment for the children on the issue of the validity of the trust protector's amendments. *Id.* at 723.

On appeal, the only issue before our court was whether the trust protector's amendments were valid. *Id.* at 720 n.1. We reversed the trial court's order, holding that the original trust document was ambiguous as to whether the husband intended to create a single trust or separate trusts for the wife and children, that the trust protector was authorized to amend the trust to correct ambiguities, and that the trust protector's amendments were valid. *Id.* at 724–27.

We found that "the single-trust interpretation reached by the trial court does not appear to be unambiguously supported by the trust document." *Id.* at 726. We reasoned that the provisions of the trust were conflicting and that "the overall structure of the trust contemplates something separate and apart from the Family Trust." *Id.* at 726. We further found that the original trust document was "patently ambiguous on the issue of whether a new trust is created, where the language in the trust instrument dictates that the Family Trust terminates on the death of the wife." *Id.* We then reviewed the uncontradicted evidence in the record as to the husband's intent:

> The trust protector testified in a deposition that he met with the husband twice, first in person to discuss his estate planning desires, and second over the phone to discuss and execute the documents he had drafted. During the husband's life, the husband and wife's "lives revolved around horse racing and legal gambling," and, in the trust, the husband wanted "to provide for [the wife] in the way they had lived in the past. . . ." The plan was "to create a separate Trust for the benefit of his children" which "would be created only if the Family Trust described in Article 10 . . . was not exhausted during [the wife's] lifetime[.]" The purpose of Article 10,

3

Section 7 and Article 11 was "to assure that the Family Trust was not in any way associated to a new Trust that might be created for his children." The trust protector also stated, "This challenge by the children is exactly what [the husband] expected." The trust protector noted that the husband referred to his daughter in derogatory terms, and that the daughter had not seen her father in years.

*From the trust protector's affidavit, it appears that the husband settled on the multiple-trust scheme for the very purpose of preventing the children from challenging the manner in which the wife spent the money in the Family Trust during her lifetime.* The trust protector also testified that his law firm always recommends this split-trust approach, rather than what he referred to as a "pot trust . . . where everything goes into the pot for the beneficiaries." He testified, "We have never done it the other way you're talking about, about keeping the same trust." On that basis, he prepared the amendments to the trust to reflect this intent of the testator.

*Id.* at 726–27 (emphasis added).

In finding that the trust protector's amendments were valid, we explained: "The amendments may have disadvantaged the children, but the trust protector was authorized [to] correct ambiguities with the limitation that he act either to benefit a group of beneficiaries or to further the husband's probable wishes." *Id.* at 727. We therefore reversed and remanded "with directions that the trust protector's amendments are valid." *Id.* Finally, we added: "We reject all other arguments made by the children against the validity of these provisions, *although not ruling on any matters beyond that issue.*" *Id.* (emphasis added).

On remand, the children filed a 14-count Amended Trust Complaint, alleging, among other things, that the wife had dissipated trust assets due to a gambling problem. The Amended Trust Complaint added William Andersen, Esq., who was the trust protector and drafting attorney, and the Andersen Law Firm as defendants. William Andersen passed away at some point after the children filed the Amended Trust Complaint, but the children apparently did not serve William Andersen with the Amended Trust Complaint before his death.

Counts 1 and 2 of the Amended Trust Complaint were claims for "Trust Construction" and "Declaratory Judgment." In these counts, the children essentially sought a declaration that the Family Trust never came into

existence under the terms of the original trust document because the husband attempted to create the Family Trust with the wife as the sole trustee and sole beneficiary.

The wife and the Andersen Firm (collectively the "defendants") moved for summary judgment as to Counts 1 and 2, arguing that the children had no standing because they were "neither beneficiaries nor qualified beneficiaries as those terms are defined in the Trust Code." The defendants further argued that the original trust, at the time of its creation, met all of the requirements of Florida law because it had two trustees and two beneficiaries.

The trial court entered summary judgment in favor of the defendants on Counts 1 and 2, ruling in relevant part that: (1) the children "lack standing as they are not beneficiaries or qualified beneficiaries of the original Trust, as amended by the trust protector"; and (2) section 736.0402, Florida Statutes, which states that a trust is created only if the same person is not the sole trustee and sole beneficiary, was inapplicable to this situation because the husband and wife served as co-trustees of the original trust during the husband's life.

The trial court later entered a final order dismissing the other counts of the Amended Trust Complaint, except for Count 9, which applied primarily to William Andersen personally,[2] and Counts 13 and 14, which the children had previously dismissed. The trial court found that the children lacked standing to bring any of the claims in the Amended Trust Complaint because the children were neither beneficiaries nor qualified beneficiaries.

On appeal, the children argue that they are qualified beneficiaries under section 736.0103(16), Florida Statutes, and therefore have standing to question whether the wife is properly administering the trust corpus. We agree.

A trial court's interpretation of a statute presents a pure question of law and is therefore subject to the de novo standard of review. *Kephart v. Hadi*, 932 So. 2d 1086, 1089 (Fla. 2006). Likewise, a trial court's interpretation of a trust document is reviewed de novo. *Minassian*, 152 So. 3d at 724.

---

[2] However, contrary to the representations in the briefs, Count 9 did not apply exclusively to William Andersen. Count 9 also sought to hold the Andersen Firm jointly and severally liable with Mr. Andersen.

The Florida Trust Code defines a "beneficiary" as "a person who has a present or *future* beneficial interest in a trust, vested or *contingent*, or who holds a power of appointment over trust property in a capacity other than that of trustee." § 736.0103(4), Fla. Stat. (2017) (emphasis added). In other words, "[t]he term 'beneficiary' refers to the universe of persons who have a beneficial interest in a trust." John G. Grimsley, *Florida Law of Trusts*, 18 Fla. Prac. § 16:1 (2016-2017 ed.). "It is immaterial for this purpose whether the beneficial interest is present or future, vested or contingent, or whether the person having the interest is ascertainable or even living." *Id.*

The term "qualified beneficiary" is, in turn, defined under the Florida Trust Code as

> a living beneficiary who, on the date the beneficiary's qualification is determined:
>
> (a) Is a distributee or permissible distributee of trust income or principal;
>
> (b) Would be a distributee or permissible distributee of trust income or principal if the interests of the distributees described in paragraph (a) terminated on that date without causing the trust to terminate; or
>
> (c) Would be a distributee or permissible distributee of trust income or principal if the trust terminated in accordance with its terms on that date.

§ 736.0103(16), Fla. Stat. (2017).

"The term 'qualified beneficiary' encompasses only a limited subset of all trust beneficiaries. In effect the class is limited to living persons who are current beneficiaries, intermediate beneficiaries, and first line remainder beneficiaries, whether vested or contingent." Grimsley, *supra*, § 16:1. For example, contingent remainder beneficiaries of a trust are qualified beneficiaries under section 736.0103(16), Florida Statutes, because of their interest in the distribution of any principal remaining after the death of a lifetime beneficiary. *Harrell v. Badger*, 171 So. 3d 764, 769 (Fla. 5th DCA 2015).

The definition of a "qualified beneficiary" was addressed in *Brown-Thill v. Brown*, 929 F. Supp. 2d 887 (W.D. Mo. 2013), where the federal district court considered whether the co-trustee's children, who were also the

6

grandchildren of the settlor, were qualified beneficiaries under Florida law. In *Brown-Thill*, the settlor (Eugene) created a revocable trust. *Id.* at 890. Eugene later died, survived by his wife (Saurine) and their two children, Brown and Brown-Thill. *Id.* The trust instrument provided that, upon Eugene's death, a portion of the principal would be placed into a marital trust for the benefit of Saurine, while the remainder would be placed in a separate residuary trust for the benefit of Saurine and her descendants. *Id.* The residuary trust permitted discretionary distributions to Saurine's descendants, but only during her lifetime. *Id.* After Saurine died, Brown and Brown-Hill became co-trustees. *Id.* Saurine's trusts were to be distributed into two separate residuary trusts for Brown and Brown-Thill. *Id.* Brown's children were discretionary income and principal beneficiaries of Brown's separate trust. *Id.* On those facts, the federal district court found that Brown's children were qualified beneficiaries under Florida law at the time of an arbitration between the co-trustees:

> The Court finds that Brown's children are qualified beneficiaries under Florida law . . . . Brown's children will receive trust income and principal at Brown's discretion when the separate residuary trusts are created, and will receive outright or in trust any portion of the principal that Brown appoints by will. . . .
>
> None of the beneficiaries are currently entitled to trust income or principal, given that Saurine's estate has not been terminated and discretionary disbursements could have been made only during her lifetime. Assuming the interests of Saurine, who is the only distributee under subsection (a), terminated, Brown would be a qualified beneficiary under (b), as would Brown's children under (c). If the separate trusts had already been created, Brown's children would be permissible distributees under (a), and his children under (b). Under any of the above circumstances, . . . their interest is in the proper administration of the trust before and after Saurine's trusts terminate, since the principal of Saurine's trusts will eventually flow into their father's trust, and finally to them.

*Id.* at 897–98.

Although not directly bearing on the issue of who constitutes a qualified beneficiary, the Second District's opinion in *Mesler v. Holly*, 318 So. 2d 530 (Fla. 2d DCA 1975), is instructive. In *Mesler*, the Second District held that even an unlimited power of invasion by a trustee who is also a lifetime

beneficiary of a trust "is subject to implied limitations to protect the remaindermen." *Id.* at 533. The Second District explained that, while the grant of absolute discretion to a fiduciary is very broad, "a trustee is always subject to accountability to remaindermen where discretion is improperly, arbitrarily or capriciously exercised." *Id.*

Here, the children are both beneficiaries and qualified beneficiaries of the Family Trust. The children are beneficiaries because they have a future beneficial interest in the Family Trust. More specifically, the children have a future beneficial interest in any property remaining in the Family Trust after the wife's death, since any remaining property remaining in the Family Trust will be disbursed to a new trust for the children's benefit under the terms of the original trust document. Stated another way, because any remaining property in the Family Trust would be distributed to a new trust created for the benefit of the children upon the wife's death, the children will, at a minimum, have an equitable interest in any property in the Family Trust at that time.

The fact that any remaining principal of the Family Trust would flow into a new trust created for the children, as opposed to being distributed to the children outright, does not preclude the children from being beneficiaries of the Family Trust under the statutory definition. *See Brown-Thill*, 929 F. Supp. 2d at 898 (finding that grandchildren were qualified beneficiaries, even though they were not currently entitled to trust income or principal, "since the principal of [their deceased grandmother's] trusts will eventually flow into their father's trust, and finally to them"); *see also Mesler*, 318 So. 2d at 532–33 (treating great grandchildren as remaindermen of a Florida Trust even though the remainder of the Florida Trust would not be distributed to them outright, but instead would flow to a Massachusetts Trust for their benefit).

Likewise, the fact that the Family Trust terminates upon the wife's death does not preclude the children from having a beneficial interest in the Family Trust. Indeed, by definition, a remainder interest in a trust refers to the right to receive trust property upon the termination of the trust. *See* Restatement (Third) of Trusts § 89 (2007) ("Thus, for example, the termination date of a trust for L for life, remainder to R, arrives upon L's death[.]"); *Remainder*, Black's Law Dictionary (10th Ed. 2014) (a remainder interest is "[a] future interest arising in a third person . . . who is intended to take after the natural termination of the preceding estate"); *Duncan v. O'Shea*, 07-11-0088-CV, 2012 WL 3192774, at \*7 (Tex. App. Aug. 7, 2012) ("[B]oth Trusts terminate upon Rita's death and John's descendants may inherit the Trusts' assets, if any remain. Thus, John's

descendants have a remainder interest in any property that *might* remain in either Trust upon Rita's death.").

Furthermore, in the prior appeal, although we were hesitant to refer to the children's interest in the Family Trust as a "remainder," we nevertheless recognized that the children had an interest in the property in the Family Trust. *See Minassian*, 152 So. 3d at 726 ("Although it may not be proper to refer to such an interest as a 'remainder,' distributees are entitled to the trust property upon the termination of a trust, as directed in the trust document.").

The children are also qualified beneficiaries of the Family Trust. As noted above, the term "qualified beneficiary" includes a living beneficiary who "[w]ould be a distributee or permissible distributee of trust income or principal if the trust terminated in accordance with its terms on that date." § 736.0103(16)(c), Fla. Stat. (2017). Here, the children are qualified beneficiaries under section 736.0103(16)(c), because they would be distributees of *trust principal* if the Family Trust terminated in accordance with its terms (i.e., the wife died).[3]

We find that the definition of "qualified beneficiary" under subsection (16)(c) includes the children in this situation, even though the Family Trust terminates at the wife's death and even though the children would be distributees of any remaining trust principal in the Family Trust only through a newly-created trust for their benefit. Thus, while the husband may have intended to prevent the children from challenging the manner in which the wife spent the money in the Family Trust during her lifetime, *see Minassian*, 152 So. 3d at 727, the children are qualified beneficiaries under subsection (16)(c) and are therefore entitled to the corresponding protections afforded to qualified beneficiaries under the Florida Trust Code.[4]

---

[3] Alternatively, even assuming that the relevant trust is the original trust, the children would be qualified beneficiaries under section 736.0103(16)(b), since the original trust would not terminate when the wife dies. Furthermore, the children would also constitute beneficiaries of the original trust for substantially the same reasons set forth in the analysis above concerning the Family Trust.

[4] The children further argue that if the wife were to prevail on her theory that the children are not beneficiaries of the Family Trust, this would mean that the Family Trust could never have come into existence because, upon the husband's death, the wife would have been both the sole trustee and the sole beneficiary of the newly-created Family Trust. *See* § 736.0402(1)(e), Fla. Stat. (2017) ("(1) a trust is created only if: . . . (e) The same person is not the sole trustee and sole

In sum, Florida law is clear that the wife's unlimited power to invade the Family Trust is subject to implied limitations to protect beneficiaries with an interest in any property that might remain in the Family Trust upon the wife's death. *See Mesler*, 318 So. 2d at 533. Here, because the children are qualified beneficiaries with standing to challenge the administration of the Family Trust, we reverse both: (1) the order entering partial summary judgment against the children as to Counts 1 and 2 on the basis that the children lack standing; and (2) the order dismissing the remaining counts against the wife on the basis that the children lack standing.[5] We remand for further proceedings consistent with our conclusion that the children are qualified beneficiaries with standing to challenge the administration of the Family Trust, but we do not opine on whether any particular count in the Amended Trust Complaint stated a cause of action.[6]

*Reversed and Remanded.*

GROSS and KUNTZ, JJ., concur.

* * *

**Not final until disposition of timely filed motion for rehearing.**

---

beneficiary."). We need not reach this argument, however, because we find that the children are in fact beneficiaries of the Family Trust.

[5] Appellate review of the final order disposing of the case as to the wife encompasses review of the prior summary judgment order. *See Saul v. Basse*, 399 So. 2d 130, 133 (Fla. 2d DCA 1981) ("[A]n appeal from a final order calls up for review all necessary interlocutory steps leading to that final order, whether they were separately appealable or not.").

[6] For example, to the extent some counts in the Amended Trust Complaint are premised on the theory that the Family Trust never came into existence, such counts are inconsistent with our analysis in this decision.